IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| SHEMIKA C. GEORGE,<br>Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>Defendant. | No. 16-CV-02115-LRR<br><br>**REPORT AND RECOMMENDATION** |

Claimant, Shemika C. George (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance benefits, under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Claimant also filed a Title XVI application for supplemental security income which was also denied. Claimant contends that the Administrative Law Judge (ALJ) erred in determining she was not disabled.

For the reasons that follow, I recommend the District Court **affirm** the Commissioner's decision.

## *I. BACKGROUND*

Claimant was born in 1984 and was 30 years old at the time of the ALJ's decision to deny benefits. (Doc. 13, at 2). Claimant completed an online associate's degree for medical administrative assistant. (AR 49).[1] Claimant filed her application for Social Security Disability Insurance and Supplemental Security Income benefits on May 30,

---

[1] "AR" refers to Administrative Record.

2013. (AR 17, 226). Claimant asserted that her disability began December 15, 2012, at age 28, for impairments that include schizoaffective disorder and bipolar type. (AR 265). The Social Security Administration denied the claimant's application initially and upon reconsideration. (AR 153-61, 165-72). Claimant timely filed a Request for Hearing, and a hearing was held on June 9, 2015, before Administrative Law Judge (ALJ) Jo Ann L. Draper. On October 6, 2015, the ALJ determined that claimant was able to perform past relevant work, such as laundry worker, marker, and cleaner. (AR 30). As a result, the ALJ determined claimant was not disabled and was not entitled to benefits.

Claimant timely requested review of the ALJ's decision by the Appeals Council. The Appeals Council denied review on September 22, 2016. (AR 1). The ALJ's decision, thus, became the final decision of the Commissioner. 20 C.F.R. § 404.981. On November 21, 2016, claimant filed a complaint in this court. (Doc. 3).

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. An individual has a disability when, due to his/her physical or mental impairments, he/she "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). If a claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find claimant not disabled. 20 C.F.R. § 404.1566(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 404.1520; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If claimant is engaged in substantial gainful activity, then claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial" work activity involves significant mental or physical activities. 20 C.F.R. § 404.1572(a). "Gainful" activity is work done for pay or profit, even if claimant does not ultimately receive pay or profit. 20 C.F.R. § 404.1572(b).

Second, if claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of claimant's physical and medical impairments. If the impairments are not severe, then claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also* 20 C.F.R. § 404.1520(c); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These abilities and aptitudes include: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers, and usual work situations; and (6) [d]ealing with changes in a routine work setting." *(Id.)*. § 404.1521(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then claimant is considered disabled regardless of age, education, and work experience. 20 C.F.R. §§

3

404.1520(a)(4)(iii), 404.1520(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess claimant's residual functional capacity (RFC) and the demands of his/her past relevant work. If claimant can still do his/her past relevant work, then he/she is considered not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4). Past relevant work is any work claimant has done within the past 15 years of his/her application that was substantial gainful activity and lasted long enough for claimant to learn how to do it. 20 C.F.R. § 416.960(b)(1). "RFC is a medical question defined wholly in terms of claimant's physical ability to perform exertional tasks or, in other words, what claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks and citations omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC is based on all relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). Claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *(Id.)*. If a claimant retains enough RFC to perform past relevant work, then claimant is not disabled. *(Id.)*. § 404.1520(a)(4)(iv).

Fifth, if claimant's RFC, as determined in Step Four, will not allow claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work claimant can do, given claimant's RFC, age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358 n.5 (8th Cir. 2000). The Commissioner must show not only that claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v). If claimant can make the adjustment, then the Commissioner will find

claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, the Commissioner has the responsibility of developing claimant's complete medical history before making a determination about the existence of a disability. 20 C.F.R. § 404.1545(a)(3). The burden of persuasion to prove disability remains on claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use was a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of claimant's limitations without the substance use. *(Id.)*. If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability, and claimant is not disabled. 20 C.F.R. § 404.1535.

### III. THE ALJ'S FINDINGS

The ALJ engaged in the five-step sequential analysis outlined above, as reflected in her written decision.

At Step 1, the ALJ found claimant had not engaged in substantial gainful activity since December 15, 2012, the alleged date of disability onset. (AR 19).

At Step 2, the ALJ determined claimant had the following severe impairments: schizoaffective disorder, anxiety disorder, obesity, and lumbar spine curvature. (*Id.*). The ALJ acknowledged other impairments that were listed in the record, including headaches, obstructive sleep apnea, mild early degenerative changes to the cervical spine and subchondral cyst in the right acromioclavicular joint, but found they did not cause significant limitation of functioning, or did not last for a continuous period of 12 months. (AR 20).

At Step 3, the ALJ determined claimant did not have a physical or mental impairment or a combination of impairments that met or medically equaled the severity

of a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *(AR 23-24)*. Because of this determination, disability could not be established based on medical facts alone. (20 C.F.R. Pt. 404.1520(d) and 416.920(d)). The ALJ found claimant had the following "paragraph B" criteria limitations: mild difficulties in activities of daily living; moderate difficulties in social functioning; moderate difficulties with concentration, persistence of pace, and no episodes of decompensation. (AR 21). The ALJ did not find any "paragraph C" criteria. (*Id.*).

At Step 4, the ALJ determined claimant's residual functional capacity. The ALJ found that "claimant has the residual functional capacity to perform medium work" with the following restrictions:

> [Claimant] could stand or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday. She would need to avoid constant climbing, balancing, stooping, kneeling, crouching, and crawling. She could never climb ladders, ropes, or scaffolds. She could perform tasks learned in 30 days or less, involving no more than work-related decisions, requiring little to no judgment, and only occasional workplace changes. She should have no interaction with the public and only occasional interaction with coworkers and supervisors. She could not work at a production-rate pace.

(AR 21-2). Based on this residual functional capacity, the ALJ determined claimant was not able to perform past relevant work. (AR 29).

At Step 5, based on expert testimony from a vocational expert, the ALJ determined that claimant would be able to perform the following jobs: laundry worker, marker, and cleaner. (AR 30). The ALJ found there were jobs that existed in significant numbers in the national economy that claimant could perform. (*Id.*). The ALJ therefore found claimant was not under a disability from December 15, 2012 through the date of the decision. (AR 30).

## IV.  THE SUBSTANTIAL EVIDENCE STANDARD

A court must affirm the Commissioner's decision "'if the ALJ's decision is supported by substantial evidence in the record as a whole." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  "Substantial evidence" is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Wright*, 542 F.3d at 852 (quoting *Juszczyk*, 542 F.3d at 631).  The Eighth Circuit Court of Appeals has explained the standard as "something less than the weight of the evidence and allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted).  The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).  The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989).  The court, however, does not

"reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch*, 547 F.3d at 935). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "simply because some evidence may support the opposite conclusion." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (internal quotation marks and citation omitted). *See also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion." (Internal citation omitted)).

## V. MEDICAL RECORDS REVIEW

I adopt the facts as set forth in the parties' Joint Statement of Facts and therefore only summarize the pertinent medical facts here. (Doc. 13). Claimant had been treated or evaluated by the following providers: Joan Schwinghammer, Advanced Registered Nurse Practitioner (ARNP); Dr. Mark Thibault; Shelby Allen-Benitz, ARNP; Julianne Klesel, LISW; Allison Fox, Licensed Master Social Worker (LMSW); Rachel Squier, Doctor of Physical Therapy (DPT-); Carroll Roland, Ph.D.; Dr. Dennis Colby, DO; Dr. Kersbergen, internal medicine; Dr. Mark E Lassisse, psychiatry; and Lisa Watkins, Nurse Practitioner (NP). Claimant had been treated in the following medical facilities: St. Cloud Hospital Behavioral; Wellsource (formerly Mental Health Center of North Iowa); Mercy Medical Center–North Iowa; and the Iowa Specialty Hospital.

On December 17, 2012, Dr. Mark Thibault of Physician Neck and Back Clinic evaluated claimant for spine pain associated with headaches and pain, weakness, and sensory dysfunction in claimant's extremities. (AR 375). Dr. Thibault's examination that day showed some decreased range of motion of claimant's spine, but no motor weakness or sensory loss. (AR 378). Claimant's diagnosis was mechanical low back pain, non-specific cervical spine pain, headache, non-specific thoracic pain, and deconditioning syndrome. Dr. Thibault planned for claimant to participate in a rehabilitation program and additional testing was to be considered. (AR 279.). Follow-up was on February 4, and April 3, 2013. Dr. Thibault documented that claimant was making good progress, but did not finish the physical therapy program for her low back pain, and attend only seven sessions. (AR 371).

Claimant was evaluated at St. Cloud Hospital Behavioral by Joan Schwinghammer, ARNP for management of mental health issues on March 22, 2013. Claimant complained of having "695 people in her head." (AR 360). Claimant was diagnosed with the following axis I disorders: anxiety disorder, psychosis, PTSD, rule out malingering. Claimant's medication was modified to address her psychotic symptoms. (AR 362).

Claimant was evaluated and treated by Shelby Allen-Benitz, ARNP and Julianne Klesel, LISW at the Mental Health Center of North Iowa between May 23, 2013, and November 13, 2013, with symptoms of auditory and visual hallucinations. (AR 383-411). Ms. Allen-Benitz's first evaluation, on May 30, 2013, stated "[t]o be honest, [claimant] doesn't strike me as someone with paranoid schizophrenia. She presents herself well, is articulate, and appears to lack the cognitive deficits that most patients with schizophrenia would display after years of treatment." (AR 402). Claimant's symptoms were unchanged on June 17, 2013, and she reported increased anger outbursts while visiting her family. (AR 404). On July 22, 2013, Ms. Allen-Benitz diagnosed

9

claimant with schizoaffective disorder bipolar type and also rule out malingering. (AR 409). Ms. Allen-Benitz documented that she was "highly suspicious, based on [claimant's] mannerisms and interactions during the interview, that she is malingering with the secondary gain of not having to work and continuing to qualify for Title 19 [benefits]." (AR 410). Claimant was seen ten times between August 15, and November 7, 2013, all appointment goals were to stabilize her mental health and maximize her medication. On November 14, 2013, claimant discussed that her husband was physically abusive and claimant was having some suicidal ideation. (AR 449).

Claimant treated with Wellsource (formerly Mental Health Center of North Iowa) from November 21, 2013, until June 5, 2015, for her emotional and psychiatric symptoms for a total of 47 visits. She was seen by Allison Fox, LMSW, Julianne Klesel, and Ms. Allen-Benitz. Claimant was generally in a good mood with normal affect, but continued to complain of auditory and visual hallucinations and variable levels of anxiety. Claimant was described as cooperative and interactive. (AR 469-519, 584-95).

On May 30, 2013, Ms. Allen-Benitz completed a Report on Incapacity that stated claimant could not perform work of any kind due to intense anger outbursts and socialization problems and, further, should not work until medical and psychotic symptoms showed improvement. (AR 382). On March 14, 2014, Ms. Allen-Benitz completed a Medical Source Statement that opined claimant would have marked restrictions in many areas of social interaction. (AR 466-67). These restrictions included marked limitations in claimant's ability to understand and remember detailed instructions and to carry out detailed instructions. (AR 466). These restrictions were due to claimant's "level of anxiety and psychosis, depending on the severity, made it difficult for her to comprehend and follow through." (*Id.*). Ms. Allen-Benitz opined that claimant would not be able to sustain a full-time work schedule because "she would likely become easily overwhelmed, resulting in increased anxiety and psychosis." (AR 466). Ms.

Allen-Benitz endorsed marked limitations in claimant's ability to interact appropriately with the public; interact appropriately with people in authority; respond appropriately to pressures; and respond appropriately to changes. (AR 467). Ms. Allen-Benitz authored a letter to Representative Services on June 10, 2015, in which she opined that claimant's malingering behavior was actually pathologic maladaptive coping skills. (AR 613).

Claimant was seen by Dennis Colby, D.O. and Ms. Fox in the Iowa Specialty Hospital ten times between August 10, 2015, and December 15, 2015, where at all visits claimant appeared to have a labile affect, was possibly delusional, and continued to complain of hallucinations. (AR 625).

On August 24, 2013, Carroll Roland, Ph.D. performed a Consultative Psychological Examination on claimant. Dr. Roland concluded that claimant was strongly suspected of malingering, but psychotic disorder and anxiety disorder could not be completely ruled out. (AR 417-21). The diagnoses given with that evaluation were: malingering strongly suspected, psychotic disorder, PTSD, anxiety disorder. (AR 421).

Rachel Squier, DPT of Accelerated Rehab performed a Consultative Physical Therapy Examination on claimant on September 3, 2013, at the request of the State of Iowa Disability Determination Services for claimant's neck and back pain. The examination showed mild to moderate diffuse motor weakness, limitation of range of motion around knee, normal sensation and gait abnormalities. (AR 423-24).

Claimant had lumbar X-rays on October 10, 2013, which showed questionable slight curvature and minimal osteophytic lipping. (AR 430).

Claimant was treated at Mercy family clinic, Forest City between June 13, 2013, and October 25, 2013, where she was seen five times for a variety of medical issues, including her emotional and psychiatric issues. (AR 432-47).

Claimant was treated by Mercy Medical Center–North Iowa as an outpatient between September 25, 2103, and March 19, 2015. Claimant was treated for numerous

medical issues non-related to this report. On March 6, 2015, Dr. Kersbergen noted that the psychiatric medications "have been working for her." (AR 520).

Claimant presented to the Emergency Room at Mercy Medical Center-North Iowa on April 23, 2015, for homicidal ideation, she reported planning to kill her husband because he was abusive to her. (AR 604). Claimant was admitted as a psychiatric inpatient and evaluated by Mark E. Lassisse, M.D., who adjusted claimant's medication and discharged her April 27, 2015. (AR 596) During that hospitalization, claimant took a Minnesota Multiphasic Personality Inventory (MMPI) with results consistent with symptom magnification. (AR 600).

Claimant was evaluated by Lisa Watkins, NP at Unity Point Berry Hill Center from October 19, 2015, to November 17, 2015, where claimant continued to describe hearing voices and problems with interpersonal relationships. (AR 657-661).

Non-examining sources included: Scott Shafer, Ph.D.; Jan Hunter, D.O.; Myrna Tashner, Ed.D.; and John May, M.D. Dr. Shafer concluded on September 4, 2013, that the medical impairments caused only mild restriction of activities of daily living, maintaining social function, difficulty in maintaining concentration, persistence or pace, and there were no episodes of decompensation. (AR 96). Dr. Shafer also concluded that claimant was not disabled on the basis of her mental impairments and also opined that claimant's accounts of limitations are not consistent with the record. (AR 102). Dr. Hunter concluded that claimant reported that she was not able to grocery shop, stand straight and was only able to walk fifteen steps, while at the same time claimant reported she could take care of personal needs, prepared meals, and did laundry and household chores. Dr. Hunter concluded that claimant's credibility was significantly eroded. (AR 99). Further, claimant's accounts of her limitations were not consistent with the records of the provider who treated her spinal symptoms. (*Id.*). Dr. Tashner and Dr. May confirmed these opinions on November 19, 2013.

12

## VI. DISCUSSION

Claimant argues the ALJ's residual functional capacity assessment is flawed for two reasons:

1. The Commissioner failed to evaluate properly claimant's symptoms under Social Security Ruling 16-3p. (Doc. 15, at 5).

2. The ALJ failed to give proper weight to the opinions of the examining source Ms. Allen-Benitz. (Doc. 14, at 11).

I will address these arguments in turn below.

### A. *The Commissioner's evaluation of claimant's symptoms pursuant to Social Security Ruling 16-3p.*

Claimant argues that the Commissioner and ALJ erred in the ALJ's evaluation of claimant's subjective symptoms. (Doc. 15, at 5). Claimant argues that the SSA Ruling 16-3p, issued on March 16, 2016, (effective March 28, 2016), should be retroactively applied to the ALJ's decision of October 6, 2015, and the Appeals Council review of October 27, 2015. (Doc. 15). Claimant further argues that because the recent ruling would affect the determination, SSR 16-3 supersedes SSR 96-7p, and the term credibility should not be used or considered in the ALJ's determinations, rather, claimant's symptoms should be determinative. SSR 16-3p, 81 Fed. Reg. 51, 14166 (Mar. 16, 2016). Claimant suggests that the fact pattern that was weighed by the Commissioner and ALJ that resulted in the conclusion of eroded credibility should instead be weighed as an independent psychiatric symptom in determination of overall disability. (Doc. 15, at 7).

At the time of the ALJ's determination, SSR 96-7p was the applicable standard. Consistent with SSR 69-7p, in evaluating a claimant's credibility, an ALJ must consider the entire record, including the medical records, statements by claimant and third parties, and factors such as: (1) claimant's daily activities; (2) the duration, frequency, and

13

intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In arriving at a credibility determination, an ALJ is not required to discuss every piece of evidence submitted. *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the [claimant's] complaints . . . under the *Polaski* standards and whether the evidence so contradicts the [claimant's] subjective complaints that the ALJ could discount his or her testimony as not credible." *Brown v. Astrue*, 4:08-CV-483 CAS, 2009 WL 88049, at *8 (E.D. Mo. Jan. 12, 2009) (quoting *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004)). The ALJ must "specifically demonstrate in his decision that he considered all of the evidence." (*Id.* (citing *Masterson*, 363 F.3d at 738; *Cline*, 939 F.2d at 565)). In the end, however, "[t]he determination of a claimant's credibility is for the Commissioner, and not the Court, to make." (*Id.* (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005); *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)). The ALJ appropriately applied this standard in considering claimant's credibility and concluded, based on claimant's activity of daily living and documented mental status examinations that claimant's credibility was eroded. (AR 28).

Here, the claimant's credibility was not determinative in the final ruling of the Commissioner or the ALJ. The ALJ appropriately considered the record as a whole in her final determination; "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." (AR 27-28). Thus even if credibility were not a factor, the ALJ sufficiently developed the record to conclude

that, based on the record as a whole, claimant's symptoms were not disabling pursuant to 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505, and that determination does not conflict with SSR 16-3p.  As SSR 16-3p states:

> [i]n contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner.

SSR 16-3p, 81 FED. REG. 51, 14166 (Mar. 16, 2016).  Claimant has not met her burden of showing that application of SSR 16-3p would reverse the final decision of the Commissioner or ALJ.

Credibility issues aside, if claimant's psychiatric illness causes the symptom of symptom magnification then, by definition, claimant's subjective symptoms have little reliability in determining residual functional capacity and disability.  Furthermore, symptom magnification, as an independent symptom, does not substantially increase work-related impairment.  Here, the ALJ adequately developed claimant's record and identified that the record documents—episodes of good response to medication, situational stressors magnifying claimant's complaints, and repeated mental status examinations—showed that claimant communicated and acted appropriately in all documented encounters.  (AR 22-28).  Therefore, retroactive application of SSR 16-3p, which was effective as of March 28, 2016, to the instant case is not appropriate.  *Van Vickle v. Astrue*, 539 F.3d 825, 829, n.3 (8th Cir. 2008) (the court refused to reconsider a case based on a new ruling because the new ruling would not affect the final determination).

### B. *The evaluation of the opinions of treating psychiatric provider Ms. Allen-Benitz*

Claimant argues that the ALJ did not accord sufficient weight to Ms. Allen-Benitz's opinion, specifically the Medical Source Statement on March 14, 2014, which stated claimant would not be able to sustain a full-time work schedule because "she would become easily overwhelmed, resulting in increased anxiety and psychosis." (AR 466). Ms. Allen-Benitz endorsed marked limitations in claimant's ability to interact appropriately with the public; interact appropriately with people in authority; respond appropriately to pressures; and respond appropriately to changes. (AR 467). Additionally, on May 30, 2013, Ms. Allen-Benitz opined that claimant would not be able to work due to intense anger outbursts and problems with socialization. (AR 382).

On June 10, 2015, Ms. Allen-Benitz asserted that claimant's malingering behavior was actually pathologic maladaptive coping skills, thus reversing Ms. Allen-Benitz's prior statements that claimant was likely malingering. (AR 613). Claimant asserts that all other experts that concluded claimant was malingering hinged on the initial concern of Ms. Allen-Benitz. (Doc. 15). Claimant argues that because Ms. Allen-Benitz changed her opinion regarding the malingering, the opinions of the non-examining and consultative sources, who did not have Ms. Allen-Benitz's June 10, 2015, letter should have been given little weight by the ALJ. Claimant proposes that the record needs to be redeveloped in light of Ms. Allen-Benitz's revised opinion. (Doc. 15, at 10-11).

I conclude the ALJ gave proper weight to the opinions and letter of Ms. Allen-Benitz, because the ALJ identified that independent of Ms. Allen-Benitz's initial conclusions, the record supported a conclusion that claimant exhibited malingering behaviors. (AR 28). The ALJ emphasized, that during claimant's physical therapy consultative evaluation of September 3, 2013, claimant reported an inability to stand up straight, inability to walk long enough to complete grocery shopping, inability to lift any

weight heavier than her purse, exhibited diffuse deficits in muscle strength, and ambulating with a wide based, forward-leaning gait, and had difficulty bending. (AR 28-29, 423). Yet, during her examination with Dr. Roland just one month prior, claimant cited no physical deficits whatsoever, and the objective medical evidence contains largely no ongoing treatment for back pain or other musculoskeletal pain, save a few rehabilitation sessions in late 2012 and early 2013. (AR 29, 417-418). The ALJ also noted throughout her decision that treating providers found that the claimant had no significant gait impairments, and that claimant cited no physical deficits during the hearing. (AR 29). Therefore, independent of Ms. Allen-Benitz's, opinions, the physical consultative examination indicated symptom magnification, exaggeration, and/or malingering.

Ms. Allen-Benitz's letter of June 10, 2015, in which she reversed her opinion of claimant's malingering, was written in response to an inquiry from claimant's counsel, and contradicts her prior medical records. As such, it is entitled to less weight compared to treatment records. *Martise v Astrue*, 641 F.3d 909, 924 (8th Cir. 2011) (An ALJ may justifiably discount a treating physician's opinion in a social security disability proceeding when that opinion is inconsistent with the physician's clinical treatment notes.); *see Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (noting an ALJ may discount treating physician's opinion if the physician has offered inconsistent opinions). *See also Anderson v. Astrue*, 696 F.3d 790, 793-94 (8th Cir. 2012) ("[a] treating physician's own inconsistency may also undermine [her] opinion and diminish or eliminate the weight given [her] opinions," such as when the opinion is inconsistent with contemporaneous treatment notes); *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (citation omitted). Similarly, an ALJ may discount the weight given to a treating physician's opinion if the treatment notes simply do not support the limitations endorsed in the opinion. *See Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (holding that a treating

physician's opinion is entitled to less weight if it is unsupported by the physician's own records).

Although an ALJ must consider medical opinion evidence in formulating a claimant's residual functional capacity, the ALJ has a duty to formulate the RFC based on all of the relevant and credible evidence of record. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007); *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir. 2000) (per curiam). This evidence includes a claimant's daily activities. *Owen v. Astrue*, 551 F.3d 792, 799 (8th Cir. 2008) (finding an ALJ properly discounted the opinions of a medical source because claimant's activities of daily living did not reflect the physical limitations found). Thus, an "ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall*, 274 F.3d at 1219). When determining the RFC, "'[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence.'" *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (quoting *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998)). Regardless of the source of the opinion, however, an ALJ must explain and give good reasons for the weight accorded to the various opinions. 20 C.F.R. § 404.1527(c)(2).

Ultimately, it is not for this Court to re-weigh the medical evidence or resolve conflicts between medical professionals. So long as the ALJ's analysis is reasonable, this Court cannot reverse the Commissioner's decision. *See Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999) ("We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome." (internal citation omitted)).

The ALJ assigned greater weight to the opinions of examining consultative provider, Dr. Carroll Roland, as well as state non examining sources including Scott

Shafer, Ph.D.; Jan Hunter, D.O.; Myrna Tashner, Ed.D.; and John May, MD. As the ALJ pointed out, these opinions are consistent with the record as a whole. (AR 24-28). The opinions of non-examining state agency consulting physicians normally cannot constitute "substantial evidence" in support of an ALJ's decision when those opinions directly conflict with the opinions of treating or examining sources. *See, e.g.*, *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003) ("The opinions of non-treating practitioners who have attempted to evaluate claimant without examination do not normally constitute substantial evidence on the record as a whole." (citing *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999)); *Dixon v. Barnhart*, 324 F.3d 997, 1002-03 (8th Cir. 2003) (holding that "[g]iven the contradicting recommendations in the record and the insufficiently developed record surrounding Dixon's cardiac problems, [the non-examining consulting physician's] opinion does not constitute substantial record evidence that Dixon can perform medium work." (citing *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). When, however, assessments of state agency medical consultants are consistent with other medical evidence in the record, those assessments can provide substantial evidence supporting the ALJ's RFC assessment. *See Stormo*, 377 F.3d at 807-08. Indeed, an ALJ may rely on a state agency consulting physician's opinion even when that opinion conflicts with the opinion of a treating physician. *See Ponder v. Colvin*, 770 F.3d 1190, 1194-95 (8th Cir. 2014) (concluding that three non-examining consulting physician's opinions trumped a treating physician's opinion). An ALJ may ultimately base an RFC assessment on medical evidence, even in the absence of any medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2013). It is the ALJ's duty to weigh the medical evidence. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

I find the ALJ properly acted within her zone of choice in weighing the work-related limitations opined by Ms. Allen-Benitz. The ALJ conducted an adequate analysis

19

in the area of the residual functional capacity assessment even though the ALJ's conclusion did not conform to that of Ms. Allen-Benitz. (AR 25).

## *VII. CONCLUSION*

For the reasons set forth herein, I respectfully recommend the District Court **affirm** the ALJ's determination that claimant was not disabled, and enter judgment against claimant and in favor of the Commissioner.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 8th day of September, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa